**Commonwealth v. Norcom**

*John R. Graham,* Assistant District Attorney for Commonwealth.

*August T. Groover,* for defendant.

REED, JR., J., July 20, 1972.—Defendant, Claudia

Norcom, was tried by jury and convicted of conspiracy and traffic in lottery and acquitted of lottery. He has filed motions for new trial and in arrest of judgment, which are now before us.

On September 15, 16, 21, and 22 of 1970, county detectives conducted a surveillance of defendant and one Phillip Waites. On each day they witnessed much the same activity. Just before 3 p.m., defendant would drive to and park in the area of Fifth Street and Morton Avenue in Chester. Meanwhile, Waites had made calls at certain houses receiving slips of paper, then about 3 p.m. drove to Fifth and Morton, where he would park and go over to defendant's car and hand defendant an envelope. Defendant would then depart and go back to Philadelphia. From all the circumstances the county detectives concluded this activity constituted a "numbers" operation, and procured a warrant for defendant and Waite's arrest. The detectives, under the direction of Chief Rocco Urella, now Commissioner of State Police, staked out the area on October 7, 1970, when the same activity took place. They closed in on defendant and Waites. Waites attempted to run away.

They took from defendant a sealed envelope, with "Chink," written on it, "Chink" being Waites nickname. Opening the envelope, a slip of paper was revealed with various numbers plays, and $287 was found on the person of defendant claimed by him as numbers money. Defendant was interrogated and with full understanding of his rights, gave a voluntary statement to Chief Urella in which he recognized and acknowledged his activity as part of a numbers operation. He stated he was hired at $25 a trip to make certain rounds and pickup envelopes and money, but disclaimed actual knowledge that he was a numbers

pickup man until the time of his arrest, when the police opened the envelope.

Defendant contends the verdict was against the weight of this evidence, because the Commonwealth never proved a conspiracy, nor that defendant "sold" lottery tickets. Quite the contrary exists from the testimony. Defendant's activities involved a clear agreement between defendant and another at least to be a paid pickup man; and further he did meet in concert with Waites to carry out the illegal activity of traffic in lottery.

Whether or not defendant knew that his conduct was illegal and formed a part of an illegal operation in any event posed a question of credibility for the jury, and they decided against defendant.

It should be understood that while defendant did not actually "sell" numbers he is not absolved from the offense of traffic in lottery tickets. As Commonwealth ably pointed out, the sale of lottery tickets must by necessity embrace the entire operation from the smallest writer to the largest writer, then to the pickup man, and through him to the bank, and on back down again for the payoffs. The whole constitutes selling; and all who play out their respective roles in it conspire and act together to sell—all become equally integral and essential parts of the operation to sell numbers plays. See Commonwealth v. Graham, 192 Pa. Superior Ct. 293, 162 A. 2d 68; Commonwealth v. Fiorini, 202 Pa. Superior Ct., 88, 195 A. 2d 119.

For these reasons defendant's request for new trial must be denied, and with that his motion in arrest of judgment also.

## ORDER

And now, July 20, 1972, defendant's motions for new

trial and in arrest of judment are denied and defendant is directed to appear before us on September 8, 1972, Court Room No. 6, Court House, Media, Pa.